# NORTHERN IMMIGRATION ASSOCIATION, a Corporation, v. FRANK C. ALGER.

(147 N. W. 100.)

**Land broker — contracts — sales — commissions — principal and customer — brought together through his efforts — price.**

1. When a land broker's contract is to bring parties together, and for a commission when his act of bringing them together results in a sale, his commission is earned when his principal and a customer are brought into contact by his efforts and a sale is consummated, even though it may not be on the terms or for the price originally proposed.

**Land broker — principal — customer — sale — entitled to commissions — negotiations — continued by successor — notice of — no objections.**

2. A land broker, after correspondence with his principal resulting in bring-

---

Note.—The question as to when a broker has earned his commission is treated in a note in 139 Am. St. Rep. 225.

As to the right to commission where broker procures purchaser at price stated by his principal, but on slightly different terms in regard to cash or time of payment, and the owner refuses to consummate the sale, see note in 21 L.R.A.(N.S.) 935. And upon the effect of a contract expressly making broker's right to commissions dependent upon "sale" of property or other condition beyond that ordinarily implied, see note in 29 L.R.A.(N.S.) 533.

ing a purchaser to the principal, is entitled to his commission, even though before the trade was completed he became connected with a corporation, and turned the remainder of the negotiations over to the corporation, he having notified his principal of the fact, and the principal having made no objection, and having carried on the remainder of the correspondence and dealings with the corporation the same as though the original party had still continued as a party to their transactions.

**Evidence — sufficient to sustain verdict — awarding commissions — sale.**

3. Evidence examined, and *held* sufficient to sustain the verdict of a jury awarding commissions for bringing an owner and purchaser together and resulting in a sale of a half section of land.

Opinion filed April 15, 1914.

Appeal from judgment of the District Court of Mountrail County, *Frank E. Fisk,* J.

Affirmed.

*Palmer, Craven, & Burns,* for appellant.

The contract proved must be the contract pleaded. Such a contract must be fully set forth in the complaint, and the proof must conform thereto. Kane v. Sherman, 21 N. D. 249, 130 N. W. 222; 19 Cyc. 275; Steere v. Gingery, 21 S. D. 183, 110 N. W. 774.

The mere fact that the broker brought the parties together—introduced them—is not enough to entitle him to a commission. He must be the procuring cause of the sale. Keener v. Harrod, 2 Md. 63, 56 Am. Dec. 706; Bouscher v. Larkins, 84 Hun, 288, 32 N. Y. Supp. 305; Sibbald v. Bethlehem Iron Co. 83 N. Y. 378, 38 Am. Rep. 441; Singer & T. Stone Co. v. Hutcinson, 61 Ill. App. 308; Putman v. How, 39 Minn. 363, 40 N. W. 258; Armstrong v. Wann, 29 Minn. 126, 12 N. W. 345; Babcock v. Merritt, 1 Colo. App. 84, 27 Pac. 882; Howie v. Bratrud, 14 S. D. 648, 86 N. W. 747; Ball v. Dolan, 18 S. D. 558, 101 N. W. 719.

After the broker had failed to make a sale or procure a purchaser, and the principal then made the sale, the broker was not entitled to commissions. 19 Cyc. 257.

The broker cannot abandon the employment, leaving the landowner to work up a sale alone, and then recover commissions as though he had fulfilled his contract. 19 Cyc. 250, 251, 278; Wylie v. Marine Nat.

Bank, 61 N. Y. 416; Sibbald v. Bethlehem Iron Co. 83 N. Y. 378, 38 Am. Rep. 441.

*Henry J. Linde,* for respondent.

The use of the terms, "for sale," or "to sell," means no more than to negotiate a sale by finding a purchaser who buys upon satisfactory terms. Keim v. Lindley, — N. J. Eq. —, 30 Atl. 1063.

Such a contract is fully satisfied, and the agreed commission earned, when a purchaser is found. Terry v. Reynolds, 111 Wis. 122, 86 N. W. 557; Glentworth v. Luther, 21 Barb. 145.

Where the sale is made upon different terms than those mentioned originally between the principal and broker, and the principal assents to such new terms of sale, and the deal is so closed, the agent or broker is entitled to compensation as fixed by his original contract. Ward v. McQueen, 13 N. D. 153, 100 N. W. 253; Huntemer v. Arent, 16 S. D. 465, 93 N. W. 653; Knowles v. Harvey, 10 Colo. App. 9, 52 Pac. 46; Magill v. Stoddard, 70 Wis. 75, 35 N. W. 346; Potvin v. Curran, 13 Neb. 302, 14 N. W. 400; Welch v. Young, — Iowa, —, 79 N. W. 59; Goss v. Stevens, 32 Minn. 472, 21 N. W. 549; Wilson v. Mason, 158 Ill. 304, 49 Am. St. Rep. 163, 42 N. E. 134; McFarland v. Lillard, 2 Ind. App. 160, 52 Am. St. Rep. 234, 28 N. E. 229; Ratts v. Shepherd, 37 Kan. 20, 14 Pac. 496; Sussdorff v. Schmidt, 55 N. Y. 319; Anderson v. Smythe, 1 Colo. App. 253, 28 Pac. 479; Bell v. Kaiser, 50 Mo. 150; Lloyd v. Matthews, 51 N. Y. 124; Nesbitt v. Hesler, 49 Mo. 384; Gelatt v. Ridge, 117 Mo. 553, 38 Am. St. Rep. 683, 23 S. W. 882; Bowe v. Gage, 127 Wis. 245, 115 Am. St. Rep. 1010, 106 N. W. 1074; Willey v. Rutherford, 108 Wis. 35, 84 N. W. 14; Scott v. Patterson, 53 Ark. 49, 13 S. W. 419; McConaughy v. Mahannah, 28 Ill. App. 169; Somers v. Wescott, 66 N. J. L. 551, 49 Atl. 462; McMillen v. Beves, 77 C. C. A. 444, 147 Fed. 218; Johnson v. Hayward, 74 Neb. 157, 5 L.R.A.(N.S.) 112, 103 N. W. 1058, 107 N. W. 384, 12 Ann. Cas. 800; Tinges v. Moale, 25 Md. 480, 90 Am. Dec. 73; Livezy v. Miller, 61 Md. 343; Lapsley v. Holridge, 71 Ill. App. 652; Loehde v. Halsey, 88 Ill. App. 452; French v. McKay, 181 Mass. 485, 63 N. E. 1068; Wolverton v. Tuttle, 51 Or. 501, 94 Pac. 961; Wilson v. Mason, 158 Ill. 304, 49 Am. St. Rep. 162, 42 N. E. 134; Ratts v. Shepherd, 37 Kan. 20, 14 Pac. 496; Veazie v. Parker, 72 Me. 443; Finnerty v. Fritz, 5 Colo. 174; Buckingham v. Harris, 10 Colo. 455, 15 Pac. 817; Stewart v.

Mather, 32 Wis. 344; Lincoln v. McClatchie, 36 Conn. 136; Cook v. Fiske, 12 Gray, 491; Bell v. Kaiser, 50 Mo. 150; Jones v. Adler, 34 Md. 440; Scott v. Clark, 3 S. D. 486, 54 N. W. 538; Zeimer v. Antisell, 75 Cal. 509, 17 Pac. 642; Goldsmith v. Coxe, 80 S. C. 341, 61 S. E. 555; Wright v. McClintock, 136 Ill. App. 438.

The jury in the lower court found against the defendant, and such finding should be accepted by this court. Knowles v. Harvey, 10 Colo. App. 9, 52 Pac. 46.

SPALDING, Ch. J. This action was brought to recover compensation claimed to be due from the defendant to the plaintiff. Briefly, the complaint alleges that on April 1, 1911, the defendant was the owner of, and, for the purpose of effecting a sale or exchange thereof, had the control of, certain lands, consisting of 320 acres, situate in the county of Mountrail. That he was at that time attempting to get into communication with some suitable person to whom he could effect a sale, or with whom he could negotiate an exchange of said land for other property, and for that purpose requested the services of one Hart, and in due course employed him to place him in communication with someone with whom he could negotiate such exchange of property; and for such service, if rendered, he agreed to pay said Hart $480. That one Crabbe was the owner of certain live stock and a buggy and harness, and that, pursuant to the contract aforesaid, Hart interested said Crabbe in the subject of an exchange of his personal property for the land in question; and thereupon, and about the 4th of April, 1911, communicated to the defendant information as to the fact that said Crabbe was a prospective customer, and with whom such exchange might be consummated. That by reason of these facts the defendant negotiated with said Crabbe personally, and in due time, as the result of the services and assistance of said Hart, consummated an exchange of properties, whereby the defendant became the owner of the personal property aforesaid, and Crabbe the owner of said 320 acres of land. That defendant has never paid any part of the said sum of $480 agreed upon, except the sum of $100. That on the 6th of June, 1911, Hart sold and assigned said account and indebtedness to the plaintiff. The answer, so far as material, denies the request for the services of Hart and his employment by defendant, or that by reason thereof he placed defendant in

communication with said Crabbe, but does allege that about the 13th of March, 1911, Hart informed defendant that he had a customer at Fargo for the land in question, on certain terms of exchange for said personal property. That thereafter such customer, it being said Crabbe, went to the office of the defendant in Stanley, North Dakota, and informed him that he was the party about whom Hart had written the defendant, and that he desired to look at the lands with a view to making the exchange as indicated by Hart. He then pleads some variation between the list of property as enumerated in Hart's correspondence, and its character, and the facts as given him by Crabbe on the trip to Fargo with Crabbe; and alleges upon being advised as to such discrepancies, or false representations, as they are termed, he declined to proceed further in effecting an exchange of the lands for the personal property; and alleges damages of $100 by way of defense, and that Hart took possession of a buggy, which belonged to defendant, of the value of $225, and appropriated it to his own use. Trial was had, which resulted in a verdict of $380 in favor of plaintiff. From such judgment and an order denying a new trial defendant appeals.

The contract between the parties is evidenced by correspondence, to which reference is made for an understanding of the facts.

In exhibit B, dated February 4, 1911, the defendant writes Hart, and inquires if he is in a position to co-operate with him in selling some cheap lands in his vicinity, and informs him that he has some money-making propositions to offer.

Exhibit F is a letter dated February 7, 1911, from Hart to defendant, informing him that he is living in Valley City, instead of McHenry, where exhibit B was addressed, and asks what arrangements he can make to do business with him, and if he can get a list.

Exhibit G, dated February 9, 1911, is the reply of defendant to Hart, in which he says that his proposition is substantially as follows: "I get contracts and options at the lowest price and best terms possible, and show land, and do all I can to effect sales. You get purchasers here, and come with them if possible, and assist in closing deals." He then informed him that his railroad fare would be first deducted from commissions and the remainder divided equally, and that in all cases they should get at least $3 per acre, and in most cases much more, but that they should not let a buyer get away, if he had any money, as he

had plenty of land to work on. He gave him further information about his list, and invited him to visit him, and said that he thought they could do a land office business.

Exhibit A, dated February 17, 1911, is another letter from defendant, calling attention to his former letters and that he had not received a reply, and asking what Hart thought of his proposition; and stating further that he would pay him a commission of $1.50 cash on all sales if he preferred it to his other offer. He also inclosed a small list of lands, and invited a reply.

February 22, 1911, by exhibit C, Hart replied that the list was very attractive; that he would like to co-operate, but as the weather was yet bad he had not done much, but that he would like a full description of Nos. 5 and 8 of the list. He informed him that he had a couple of customers that would buy as soon as spring opened, and made other inquiries not here material.

Exhibit H, dated February 24, is defendant's reply. He refers to the subject of Hart aiding him in selling land, and that tracts 5 and 8 were his, and were listed with Hart subject to prior sale. He described also No. 5 on the list, and said he had a deed to both tracts, and that he (Hart) could continue to work on them unless sold. He then submits a proposition as to 160 acres 4 miles north of Ross, with terms, etc.

Exhibit I is Hart's reply, in which he refers to No. 8 and No. 5, and says he is trading this land, and will expect to pay $400 in cash and assume the mortgage, and inquires if this is right. That he had a customer for No. 7, and would show it as soon as the snow was off.

Exhibit D, dated March 9, 1911, informs Hart that defendant has listed the northwest quarter of section 33, township 157, range 92, which is one of the tracts involved in this action; that it cornered No. 8, for which he said Hart had the deal. He describes the quarter of 33, and prices, and says it is owned by a woman who wants to sell or trade for something that she can rent, and inquires if Hart thinks he can do anything with the proposition.

Exhibit J, dated March 13, 1911, is a letter from Hart to defendant, in which he informs him that he is going to quote the northwest of 33 and No. 8, which it corners, to a man in Fargo, in a trade for stock. He gives the price, and says, "I would expect to turn these horses and cattle over to you, or we will dispose of them here, and split

up the proceeds;" and informs him that if the man writes him, defendant, concerning this deal, that he had exhibit J for reference.

Exhibit K is a letter from Hart to defendant, dated March 13, 1911, which has no materiality here except as showing that they were working together with other parties.

Exhibit L is to the same purport, but indicates that the property being considered with another party is the northwest of 33, before referred to.

Exhibit M is a letter from Hart to defendant, indicating that he has quoted the two quarters which corner together, and among other things says that "I would expect to either split with you, or settle with you on the basis of $400 cash on 29 and $200 on 33, but would prefer if you could take the stock and settle with me;" and instructs defendant that, in case the man writes him, to handle the deal according to Hart's letter.

Exhibit N, dated March 13, 1911, is a letter from Hart to Crabbe, the customer with the stock, in which he informs Crabbe that he has concluded to quote him the land involved in this suit, and describes it, with the improvements, and the terms on which he will make exchange.

Exhibit O is a letter dated March 16, 1911, from defendant to Hart, instructing him, if possible, to close a deal with Crabbe, and that they could arrange the division (of commissions and profits) between themselves so it would be satisfactory.

On March 27, 1911, by exhibit P, defendant again writes Hart, inquiring how he is coming on with this deal, and informs him that he has seen a son-in-law of the woman who owns the land in 33, who says that the woman would probably take some stock for her rights in the land, so that would leave the cash to them.

On April 3, 1911, by exhibit Q, Hart writes defendant that he has been away and has just got home, and cannot say just what the outcome of their trades is, and informs defendant that he is now connected with the Northern Immigration Association of Fargo, and expects to do his business through them in the future.

Exhibit R is a letter to defendant from Hart, dated April 4, 1911, referring to the deal for this land with Crabbe, and informing defendant that Crabbe feels like looking the land over; refers to terms of exchange: "I thought you could get together and make a deal;" and tells

defendant, if he concludes a deal, to reserve Hart's regular commission of $1.50 per acre.

Exhibit 3 is a letter, dated April 4, 1911, from Hart to defendant, calling his attention to the fact that he had notified him that he was now connected with the Northern Immigration Association of Fargo, and in the future to send all his correspondence in their care, that he had instructed them to open and read the same, and complete any deals that he has on with defendant.

Exhibit T is dated April 4, 1911, and in it Hart informs defendant that if he makes a deal with the Fargo man he would be willing to take stock for their part of the commission, in case no cash could be obtained. He also informs defendant that the deal is up to him to do the best he can. That Crabbe would come if defendant should like him.

On April 5, 1911, by exhibit U, defendant writes Hart, acknowledging receipt of his letter, exhibit R, and stating that he is now with the Immigration Association, and that if the stock is first class he will make a trade on the terms specified in the correspondence. That if Crabbe came up there, and the defendant was not able to trade with him on this proposition, he would endeavor to make some kind of a deal, and "will pay you your commission on whatever deal I make." That he would do the best he could to close the deal, but that a few days later would be a better time for him to come on account of snow; and asking him to notify him ahead of when Crabbe would start.

Exhibit V is a letter from the Immigration Association, dated April 6, 1911, to defendant, acknowledging receipt of exhibit U, and informing him that they would try and get Crabbe started his way "as soon as the snow is off," etc.

In exhibit W, dated April 8, 1911, the association is informed by defendant that the snow is now practically gone; "send Crabbe up."

Exhibit X, dated April 13, 1911, informs defendant that the association had a talk with Crabbe the day before; that he expected to start for Stanley that week; and other matters with reference to prices, and that they were quite certain defendant could make a deal.

Exhibit Y is dated May 16, 1911, and is a letter from Hart to defendant, stating that on his return from Indiana he found the deal with Crabbe had been closed and a buggy left for him to dispose of; that he had sold the buggy for $100, giving him credit for that amount

on commissions; also requesting him to take the matter up with the association at once.

Exhibit Z and exhibit 1 are letters written in June, from the association to the defendant, calling his attention to the fact that the balance of commissions had not been paid; that the account had been assigned to them; that the buggy had been credited at $100, and requesting a remittance of the balance; also calling attention to the fact that he had not replied to their letters on the subject. No replies to these letters, relating to the payment of the commission, are found.

Exhibit 2 is a bill of sale from Crabbe to the defendant, of two mares, the buggy referred to, and three Jersey cows; the consideration named is $1,125.

Exhibit 3 is a bill of sale from Crabbe to defendant, consideration $1,000, of one brown stallion, Al Logan. Both are dated April 27, 1911.

Exhibit 7 is a deed from Elenora C. Kirkedalen, by George Eastwood, her attorney in fact, to Brabbe, of the northwest quarter of 33–157–92, dated and acknowledged April 27, 1911.

Exhibit 8 is a deed from defendant and wife to Crabbe, of the southeast quarter of 29–157–92, also acknowledged on the 27th of April, 1911.

Exhibit 9 is a bill of sale from Crabbe to George Eastwood, of one stallion, La Ponte, four Jersey cows, two training carts, and one set harness, of the same date, consideration $1,150. The consideration named in each of Exhibits 7 and 8 is $2,400.

Exhibit 10 is a bill of sale from Eastwood to the defendant, of four Jersey cows and the stallion La Ponte, and refers to agreements on the part of Eastwood with reference to certain lots in Stanley, and gives Eastwood the right to take possession of the personal property named if conditions are not complied with.

Exhibit 11 is a contract for a deed between defendant and wife to Eastwood, for the lots in Stanley referred to in exhibit 9.

The first assignment of error is that the evidence is insufficient to justify the verdict. Under this head it is contended that there is no evidence to show any contract wherein defendant contracted to pay any cash commission whatever. The evidence shows that the contract between the parties was for Hart to get customers in touch with defend-

ant; that if his doing so resulted in a sale a commission was to be paid. This commission was to be $1.50 an acre, originally, subject to certain exceptions. And this without much reference to the completion of a contract on the exact terms which might have been first considered. Hart was to show customers to defendant, and in a very large measure leave it with defendant to jockey with the customers, and make any trade that was satisfactory to defendant, and, whatever trade was consummated, a commission was to be paid. True, correspondence shows that in some instances it might not be cash, but might be taken in trade as agreed upon; but in the trade which is the subject of this litigation the last word on the subject from the defendant is found in exhibit U, in which he wrote Hart, with reference to the deal with Crabbe: "If he comes here, and I am not able to trade with him on this proposition (i. e., the terms theretofore mentioned), I will endeavor to make some kind of a deal, and will pay you your commission on whatever deal I make." The evidence is conclusive that, through the agency of Hart, Crabbe made the purchase of the two quarters in sections 29 and 33. The fact that the defendant eventually went to Fargo to close the deal with Crabbe is wholly immaterial. Exhibit U, from which we have made quotation, was in reply to Hart's letter to defendant, exhibit R, relating to this transaction. In exhibit R Hart had stated to defendant that if any deal was made with Crabbe, defendant should reserve for Hart his regular commission of $1.50 per acre. Here was evidence of an accepted offer to take and give $1.50 per acre, and was amply sufficient to sustain a verdict that the contract was for the payment of this sum in case defendant and Crabbe made a trade, which they did make. We are not dealing with a contract by which a broker undertakes to procure a purchaser on certain specified terms, and his failure to do so. The fact that correspondence previous to that contained in exhibits R and U had referred to making a division between themselves, and to a modification of conditions in case cash could not be obtained, was immaterial in the light of these two exhibits. This is also true as to conversations related between defendant and officers of plaintiff association, in which defendant suggested new terms as to commission, to which their assent was not given.

It seems to be urged that under a phrase in exhibit G, in which Hart had been informed that defendant was to get contracts and options and

show land, and do all that he could to effect sales, and Hart was to get purchasers there, and came with them if possible, and assist in closing deals, that because he did not assist in closing this deal he was not entitled to the commission. But it is evident from the record that the Immigration Association assisted defendant in closing this deal. It is true they may not have been present when the deal was finally consummated, but the phrase quoted does not mean that that should be necessary. It means, rather, that Hart should do whatever he was called upon to do, or found necessary after bringing the parties together, to aid in consummating the deal. Under this head it also seems to be urged that because Hart turned over the business before it was closed, to the Immigration Association no one was entitled to any commission. The exhibits disclose that defendant was duly informed of the fact of Hart's engagement with the association, and that they would conduct the business in his absence; that defendant made no objection to doing business through the association, continued his correspondence with it, accepted its services in lieu of those of Hart. He cannot now be heard to object that the services rendered were not received in lieu of those of Hart, or on his behalf, and with the same force, effect, and intention. Under the circumstances of this case, even though the deal was closed on terms differing from those first suggested by Hart or the association, defendant is not relieved of paying commissions. It was up to the defendant to either close the deal on any terms, or not to make a deal if he did not wish to pay commissions. The record discloses clearly that Crabbe went to Stanley to examine the property, and that defendant requested and urged his attendance at that place with a view to making any trade which he might deem advantageous to himself. But doing so, under these facts, he could not defeat the right to commissions.

It is also argued that something more must be done by a broker than to give the landowner the name of a prospective customer, and then to peacefully slumber or quit the deal until the landowner happens to make some deal with the prospective purchaser named by him. This all depends on the contract between the parties. If Hart did what he contracted to do to entitle him to the commission, and a deal was made, then the commission became due, and law applicable to con-

tracts of an entirely different nature has no bearing on the issues in this case.

It is next urged that there is no evidence that defendant sold or exchanged, or was interested in the sale or exchange of, the northwest quarter of section 33. On this question it is sufficient to say that it was one of the tracts contained in the list furnished by defendant to Hart, and for which defendant authorized Hart to negotiate a sale. It may not have belonged to the defendant, but that is an immaterial fact. And there is evidence in the record to indicate that the defendant may have studiously attempted to make the contract for this quarter in such a way as to defeat Hart's claim for commissions on its sale. At any rate, there is ample evidence to warrant the jury in finding that a commission was due Hart on its sale or exchange, notwithstanding the fact that defendant testified that he was not present when the transaction was had between Mrs. Kirkedalen and Crabbe, and that the only deal between himself and Crabbe related to the southeast quarter of section 29, and that all he had to do with the sale of land in section 33 to Crabbe was to introduce Eastwood to Crabbe. As stated, he had the land listed for sale. He listed it with Hart. Hart introduced Crabbe. Then, accepting defendant's own version, instead of consummating the sale himself, he introduced Eastwood and permitted him to consummate it, Eastwood being the attorney in fact for the owner of the tract. Again, an examination of the deeds and bills of sale throws considerable light on this transaction.

Error is assigned because the court received in evidence, over objection, exhibit 7, being the deed from Eleanor C. Kirkendalen to Crabbe, of the northwest quarter of 33. This deed was clearly admissible in evidence as a link in the chain of evidence, showing that the sale was consummated through the agency of Hart. It was not necessary that defendant should have owned the land that was sold. The evidence is sufficient to sustain a verdict that he had the sale of it, and that the sale was made through Hart, and by means of defendant bringing Eastwood, the attorney in fact of Kirkendalen, and Crabbe together, resulting in a consummation of the exchange.

The evidence as to the value of the buggy sold, and proceeds applied on the commission, is in conflict; hence, as to this also, the verdict must stand.

Assignments relating to the overruling of the motions for dismissal of the action, for a directed verdict, to strike out testimony and set aside the verdict, are all covered by what we have said under the subject of the insufficiency of the evidence, and therefore need not be separately noticed.

The order and judgment of the District Court are affirmed.